**Elsie HAUGEN, Plaintiff and Appellant,**

v.

**CITY OF GRAND FORKS, Defendant
and Respondent.**

**Civ. No. 8704.**

Supreme Court of North Dakota.

May 14, 1971.

O'Grady & Edwards, Grand Forks, for plaintiff-appellant.

Caldis & Arneson, Grand Forks, for defendant-respondent.

ERICKSTAD, Judge.

The plaintiff Elsie Haugen appeals from the judgment of the district court of Grand Forks County which dismissed the plaintiff's action notwithstanding the verdict of the jury in favor of the plaintiff.

The pertinent allegations of her amended complaint, dated March 3, 1969, follow:

"IV

"That on or about February 7, 1967, the owner of premises at 16 South Third Street had allowed snow and ice to accumulate over a long period of time in such a manner that such compacted snow and ice created a hazardous and dangerous threat to the safety of the public, all in violation of the laws of the City of Grand Forks, County of Grand Forks, State of North Dakota.

"V.

"That the Defendant, City of Grand Forks, under the provisions of the City Code of the City of Grand Forks had the duty of removing the said accumulation of snow and ice that the owner of premises at 16 South Third Street had negligently allowed to remain on the aforementioned public sidewalk, and Defendant, City of Grand Forks, had actual knowledge of the accumulation of snow and ice.

"VI.

"That the Defendant, City of Grand Forks, negligently and carelessly allowed the said accumulation of snow and ice to remain as a hazard and threat to the safety of the public.

"VII.

"That on or about February 7, 1967, the Plaintiff, Elsie Haugen, was carefully and prudently walking on the said public sidewalk when she slipped and fell on the aforementioned accumulation of snow and ice, suffering a broken limb and painful and serious injuries to her person, all as a sole and proximate result of the hazardous conditions caused by the negligence of the Defendant.

"VIII

"That the Plaintiff did, through her counsel and by her own act, file in the form of an affidavit stating therein that the Plaintiff was injured due to a fall on the city sidewalk because of the dangerous condition caused by snow and ice, and that as a result of said fall, that she did break her right arm; that the Plaintiff incurred medical expense and other expenses in connection with this fall and injury; that the Plaintiff is making claim for the medical expense, pain and suffering and damages resulting therefrom in the total amount of TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS; and that this claim, verified, was served upon the mayor of the City of Grand Forks, by certified mail posted April 4, 1967, and a return receipt from the mayor on April 5, 1967, and that in reply thereto, by form of a letter dated August 8, 1967, counsel for the Plaintiff was advised that the city had denied Plaintiff's claim for damages.

"IX.

"That as a direct and proximate result of her accident, the Plaintiff has sustained a serious injury to her right arm and has sustained reasonable medical expense in the necessary treatment of said injury in the amount of TWO HUNDRED FIFTY AND NO/100 ($250.00) DOLLARS and will reasonably incur future medical expense in the amount of TWO HUNDRED FIFTY AND NO/100 ($250.00) DOLLARS.

"X.

"That as a further direct and proximate cause of the Defendant's negligence

and resulting injuries, the Plaintiff has suffered lost wages and earnings in the amount of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS.

"XI.

"That as a direct and proximate cause of the Defendant's negligence and careless act, the Plaintiff has sustained considerable pain both to body and mind and will endure future pain and suffering, both to body and mind, all to this amount of damages, EIGHT THOUSAND FIVE HUNDRED AND NO/100 ($8,500.00) DOLLARS.

"WHEREFORE, the Plaintiff prays for judgment against the Defendant in the amount of NINE THOUSAND FIVE HUNDRED AND NO/100 ($9,-500.00) DOLLARS."

The City of Grand Forks, in its amended answer dated March 3, 1969, in effect generally denied the pertinent allegations of the amended complaint and asserted the affirmative defenses of contributory negligence and assumption of the risk, which defenses we need not consider, as the same were dismissed by the court prior to submission of the case to the jury, and there has been no appeal by the City from the dismissal of those affirmative defenses.

It should be noted that prior to entering the judgment notwithstanding the verdict, the court, on the 6th of March, 1969, ordered judgment for Mrs. Haugen in the amount of the verdict, which was $1850 less the $700 paid by the owner of the premises at 16 South Third Street for a covenant not to sue.

The facts pertinent to this lawsuit may be stated briefly.

Police Officer Clarence Mack, in walking his beat on the 17th of January, 1967, observed an accumulation of ice and snow on the sidewalk in front of the 88-Cent Store situated at 16 South Third Street in Grand Forks, North Dakota.

On February 7, 1967, Mrs. Haugen, while walking from her home to work, slipped on ice and snow which had accumulated on the sidewalk in front of the 88-Cent Store, the ice and snow being slippery and rough. As a result of her fall, she suffered a broken wrist.

Charts disclosing temperature, precipitation, and wind and sky conditions for a period extending from January 1 through February 28 were introduced by the plaintiff through Duane Younggren, the Director of the University of North Dakota Weather Station. These charts and his testimony indicated that from January 16 to February 2 the temperature was not above freezing and that from February 2 through February 7 the temperature was above freezing only twice. It varied from a maximum of 39 degrees to a minimum of 5 degrees, with an average of 22 degrees, on February 3, and from a maximum of 34 degrees to a minus-1 degree, with an average of 16.5 degrees, on February 4.

Approximately one foot of snow fell during the interim between the 16th of January and the 7th of February, with .3 of an inch of precipitation on February 4.

When Officer Mack was shown photographs of the accumulation of snow and ice taken on the 8th of February, which is the day following Mrs. Haugen's fall, he testified that the photographs showed conditions "very similar" to the conditions which he witnessed on January 17.

Mr. Berg, the owner of the 88-Cent Store building, testified that he had a University student remove the snow on the sidewalk in front of the store sometime during the month of January, but didn't know on what date. Especially pertinent is the answer Mr. Berg gave to the question of whether he supervised the removal of the snow or not.

"Yes. I didn't supervise it, but when he removed it, I checked and it was removed. However, this was not at the time in question."

Raymond H. Corbett, the Street and Sanitation Superintendent, testified that he did not recall and had no record of any report concerning accumulation of snow on the sidewalk at 16 South Third Street, but that he had 165 miles of sidewalks to watch over.

Chief of Police Duane Knutson testified that he had received no reports concerning the accumulation of ice and snow on the sidewalk in front of the building situated at 16 South Third Street during the period in question. He said, however, that he did examine the accumulation of snow and ice on the 8th of February, with the attorney for the plaintiff, and conceded that it "definitely had been there a while."

In light of these facts, we think it pertinent to note the trial judge's basis for granting the motion for judgment notwithstanding the verdict as indicated by his memorandum decision, a part of which follows:

"During the trial, the Plaintiff also introduced some testimony showing that during the time from January 17, 1967, to February 7, 1967, the date of the injury, there had been approximately a snowfall of about six and a half inches and that there had been some warming trends and some freezing trends in the temperature and that this may have had some effect on the condition that existed in front of No. 16 South Third Street.

"The Court feels that the Plaintiff has not proven that there was actual knowledge on the part of the City or any of its Agents as to the condition in existence for forty-eight hours immediately prior to the time of the injury. The Court feels that this is its ruling, in view of the fact that the Section, 40–42–05 of the North Dakota Century Code, provided that actual knowledge shall not be presumed from the fact of the existence of the condition, but it shall be proved as an independent fact.

"As Officer Mack saw the compacted snow and ice present on January 17, 1967, the City had notice of the fact that there was compacted snow and ice on the sidewalk in front of No. 16 South Third Street at that time. *The question now is, would this notice be sufficient to show that the very same compacted snow and ice was present on the sidewalk twenty-one days thereafter and after six and one-half inches of snow had fallen during those twenty-one days and the temperature had been thawing and freezing several times during those twenty-one days.* Also, must be considered the fact that Sec. 40–42–05 of the North Dakota Century Code provides that 'actual knowledge shall not be presumed from the fact of the existence of the condition, but it (notice forty-eight hours prior to the injury) shall be proved as an independent fact.'

"Furthermore, the Statute prevents any presumptions from arising from the existence of the compacted snow and ice at the time of the injury so that the disputable presumption provided for in Sec. 31–11–03 (Sub-Sec. 31) cannot be used in this Case to prove the existence of compacted snow and ice at the time of the injury, even though the Defendant did not interpose any evidence.

"The disputable presumption referred to above, is as follows: 'That a thing once found to exist continues as long as is usual with things of that nature'.

"From the foregoing statement, it is readily apparent that the Plaintiff has failed to prove that the City had actual knowledge of the condition of the sidewalk forty-eight hours prior to the date of the injury and for this reason the Court will have to grant the Defendant's Motion for a Judgment Notwithstanding the Verdict." [Emphasis added.]

The statute which the trial court had in mind and which is pertinent to this lawsuit reads:

"40–42–05. Nonliability of municipality for damages caused by snow and ice on sidewalks—Exception—Actual knowl-

edge required.—All municipalities in this state shall be exempt from all liability to any person for damages for injuries suffered or sustained by reason of the accumulation of snow and ice upon the sidewalks within the municipality unless actual knowledge of the defective, unsafe, or dangerous condition of the sidewalk or crosswalk shall have been possessed by the executive officer, governing body, police officer, or marshal of the municipality at least forty-eight hours previous to the damage or injury. Actual knowledge shall not be presumed from the fact of the existence of the condition, but it shall be proved as an independent fact. No municipality in this state shall be liable in damages for any injury occasioned through the mere slippery condition of the sidewalk or crosswalk due to the presence of frost or loose snow thereon." N.D.C.C.

We have an appeal from a judgment based upon an order granting a motion for judgment notwithstanding the verdict. Most appeals are from judgments based upon orders denying, rather than from orders granting, a motion for judgment notwithstanding the verdict, but the rule we apply is the same.

In considering whether the evidence is sufficient to sustain the verdict, it must be considered in the light most favorable to the party in whose favor the verdict was rendered. Lee v. AAA North Dakota Automobile Club, 68 N.W.2d 835, 837 (N.D. 1955); Long v. People's Department Store, 74 N.W.2d 80, 90 (N.D.1955); Chicago, M. St. P. & P. R. Co. v. Johnston's Fuel Liners, 122 N.W.2d 140, 146 (N.D.1963).

What we said in *Lee* is applicable here.

"Since this is an appeal from a judgment notwithstanding the verdict, the first question for decision is whether defendant was entitled to a directed verdict at the time the motion for a directed verdict was made. Nicholson v. Roop, N.D., 62 N.W.2d 473; Weber v. United

Hardware & Implement Mutuals Co., 75 N.D. 581, 31 N.W.2d 456; Bormann v. Beckman, 73 N.D. 720, 19 N.W.2d 455. This question in turn is dependent upon whether the evidence, when viewed in the light most favorable to the party against whom the judgment notwithstanding was entered, presents any substantial issues of fact for the jury to determine. Bormann v. Beckman, 73 N.D. 720, 19 N.W. 2d 455; La Bree v. Dakota Tractor & Equipment Co., 69 N.D. 561, 288 N.W. 476."

Lee v. AAA North Dakota Automobile Club, 68 N.W.2d 835, 837 (N.D.1955).

The transcript of the trial indicates that counsel for the City moved under Rule 58 at the close of all the evidence for a directed verdict in favor of the City. We deem the reference to Rule 58 to be a mere stenographical error and treat the motion as one made under Rule 50 of the North Dakota Rules of Civil Procedure.

The pertinent parts of that rule read:

"MOTION FOR A DIRECTED
VERDICT

"(a) When Made—Effect. At the close of all of the evidence any party may move the court to direct a verdict in his favor upon one or more claims and against one or more parties. If the adverse party objects thereto, the court shall submit to the jury the issues of all claims as to which evidence has been received * * * and as to such claims the motion shall be denied. A motion for a directed verdict is not a waiver of trial by jury even though all parties to the action have moved for directed verdict. A motion for a directed verdict shall state the specific grounds therefor, and if the insufficiency of the evidence is specified the motion shall point out the particulars wherein the evidence is insufficient.

"(b) Motion for Judgment Notwithstanding the Verdict. In denying a mo-

tion for a directed verdict the court shall be deemed to have submitted the claim to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict;. * * *" N.D.R.Civ.P. 50(a) and (b).

The essence of the City's motion for a directed verdict is that Mrs. Haugen failed to show any basis upon which relief could be granted to her, in that she failed to prove that actual notice of the alleged defective, unsafe, or dangerous condition of the sidewalk was possessed by the executive officer, governing body, police officer, or marshal forty-eight hours previous to the injuries complained of.

From the evidence, which we have attempted to summarize, we conclude that there were fact questions for the jury to determine, and, accordingly, that the case was properly one for the jury to decide.

■ Applying the rule that the evidence must be viewed in the light most favorable to the verdict, we further conclude that the evidence supports the verdict.

An overly restrictive view of the statute was taken by the trial court when it required that the "very same" compacted snow and ice be present on the sidewalk at the time of the injury as existed twenty-one days prior thereto.

Once actual notice of the accumulation of ice and snow was proved, the jury was free to decide whether the snow and ice were present at the time and on the date of the accident in such form as to be the proximate cause of the plaintiff's injuries. Giving the statute a reasonable construction the plaintiff was not required to prove that the City had knowledge of the accumulation of ice and snow in the exact form in which it existed at the moment of the plaintiff's injury.

That certain facts may be inferred from other facts, even in this case, which is subject to the application of § 40–42–05, N.D. C.C., which prohibits the presumption of actual knowledge of the accumulation of ice and snow from the conditions on the date of the injury, is consistent with the instructions the trial court gave the jury.

"A fact in dispute may be proved by either direct evidence or circumstantial evidence or by both.

"Direct evidence, such as the credible testimony of an eyewitness is the sort which directly proves a fact in dispute without the aid of an inference and which in itself, if true, establishes the fact.

"Circumstantial evidence consists of facts and circumstances in the case from which the *jury may reasonably infer from the common experience of mankind the existence of a fact in dispute.*

"The law makes no distinction between direct and indirect evidence as to the degree of proof required, but accepts each as a reasonable method of proof and respects each for such convincing force as it may carry.

"You are instructed that municipalities in this state are exempt from all liability to any person for damages for injuries suffered or sustained by reason of the accumulation of snow and ice upon the sidewalks within the municipality unless actual knowledge of the defective, unsafe, or dangerous condition of the sidewalk or crosswalk shall have been possessed by the executive officer, governing body, police officer, or marshal of the municipality at least 48 hours previous to the damage or injury. Actual knowledge shall not be presumed from the fact of the existence of the condition, but it shall be proved as an independent fact. No municipality in this state shall be liable in damages for any

injury occasioned through the mere slippery condition of the sidewalk or crosswalk due to the presence of frost or loose snow thereon." [Emphasis added.] Trial court's instruction to the jury.

Although we cannot say that the instructions are the law of the case as the record does not disclose that they were submitted for approval or objection of counsel prior to being submitted to the jury, they seem to express a view contrary to the court's order.

Believing that the court was right in its instructions, we vacate the judgment notwithstanding the verdict and remand the case for a reinstatement of the verdict less the setoff of $700 and order judgment in conformity thereto.

STRUTZ, C. J., and TEIGEN, KNUDSON and PAULSON, JJ., concur.